1  KRAKAU LAW, P.C.
   Gregory M. Krakau, Bar No. 248607
2  100 Pine Street, Suite 1250
   San Francisco, California 94111
3  Telephone:   (415) 936-2400
   Facsimile:   (415) 936-2401
4  Email:   greg@krakaulaw.com

5

6  Attorneys for Plaintiff
   BLENDERS EYEWEAR, LLC

7

8                UNITED STATES DISTRICT COURT

9                CENTRAL DISTRICT OF CALIFORNIA

10                   WESTERN DIVISION

11

12  BLENDERS EYEWEAR, LLC, a Delaware          Case No.
    limited liability company,
13                                             **COMPLAINT FOR:**
                    Plaintiff,
14                                             **(1) TRADEMARK INFRINGEMENT -- 15
         v.                                        U.S.C. §§ 1114 AND 1125(a);**
15                                             **(2) UNFAIR COMPETITION AND FALSE
    LE VENTURES, LLC, a California limited         DESIGNATION OF ORIGIN – 15
16  liability company; LE VENTURES, LLC, a         U.S.C. 1125(a);**
    Nevada limited liability company; NEVEN     **(3) UNFAIR COMPETITION AND
17  EYEWEAR LLC, a Nevada limited liability        UNFAIR BUSINESS PRACTICES –
    company; NEVEN EYEWEAR, LLC, a                 CAL. BUS. & PROF. CODE §§ 17200
18  Florida limited liability company; NEVEN       AND 17500, ET SEQ.;**
    HOLDINGS, LLC, a Florida limited liability  **(4) STATE TRADEMARK DILUTION
19  company; 37 VENTURES, LLC, a Nevada           AND INJURY TO BUSINESS
    limited liability company; LE VENTURES        REPUTATION – CAL. BUS. & PROF.
20  HOLDING, INC., a Nevada corporation; Khoi      CODE §§ 14330;**
    Le, an individual residing in California;   **(5) COMMON LAW TRADEMARK
21  Suzanne Elizabeth Connelly, an individual      INFRINGEMENT; and**
    residing in Nevada; William L. Potts, an    **(6) COMMON LAW UNFAIR
22  individual residing in Nevada; Jonathan        COMPETITION**
    Strauss, an individual residing in Florida; and
23  DOES 1 through 10, inclusive,              **DEMAND FOR JURY TRIAL**

24                  Defendants.

25

26      Plaintiff BLENDERS EYEWEAR, LLC ("Blenders Eyewear" or "Blenders" or

27  "Plaintiff") complains and alleges against LE VENTURES, LLC, a California limited liability

28  company; LE VENTURES, LLC, a Nevada limited liability company; NEVEN EYEWEAR

1  LLC, a Nevada limited liability company; NEVEN EYEWEAR, LLC, a Florida limited liability

2  company; NEVEN HOLDINGS, LLC, a Florida limited liability company; 37 VENTURES,

3  LLC, a Nevada limited liability company; LE VENTURES HOLDING, INC., a Nevada

4  corporation; Khoi Le, an individual residing in California; Suzanne Elizabeth Connelly, an

5  individual residing in Nevada; William L. Potts, an individual residing in Nevada; Jonathan

6  Strauss, an individual residing in Florida and DOES 1 through 10, inclusive, as follows.

7  **<u>INTRODUCTION</u>**

8      1.    Blenders Eyewear is a well-known seller of sunglasses, eyeglasses, ski goggles,

9  snow goggles, accessories, and related merchandise.

10      2.    In 2011, Blenders CEO Chase Fisher developed a business concept of offering

11  stylish sunglasses that were of high quality but were less expensive than designer brands.  The

12  glasses were sold under the trademarks BLENDERS and BLENDERS EYEWEAR.  The

13  company also used certain design and logo marks.  One iteration of the BLENDERS mark depicts

14  the two "E"s in the mark as three horizontal lines.  Early models of the sunglasses used the three-

15  lines logo in the upper right corner of the lens, as depicted below:

16  

20      3.    Plaintiff's branding has evolved over time to include numerous marks in various

21  combinations.  On the lenses themselves, Plaintiff currently uses three marks.  The first is a

22  design with two parallel diagonal stripes within a circle, as depicted below:



27  The above mark shall be referred to as the "Stripes and Circle Mark."

28  ///

4.     Plaintiff also continues to use the word BLENDERS in a stylized format, with the two "E"s comprised of three horizontal lines, on current lines of merchandise, as depicted below:



Although Plaintiff does not currently use the three horizontal lines logo on lenses standing alone, Plaintiff reserves the right to do so in the future, as Plaintiff maintains its rights in the three horizontal lines mark through the use of that stylized form in the BLENDERS mark as depicted above.

5.     At least as early as March 15, 2017, Blenders began selling sunglasses with a three-dimensional logo configuration featuring a raised, three-dimensional Stripes and Circle Mark located on the front of the upper left corner of the sunglass lens, as depicted below:

The U.S. Patent and Trademark Office ("PTO") registered this configuration (Reg. No. 7,189,644) on October 10, 2023 (hereinafter, the "Blenders 3-D Button Logo").

6.     Because the Blenders 3-D Button Logo is trade dress of the product configuration variety, it can only be registered as a trademark upon proof of secondary meaning, *i.e*., consumer recognition that the trade dress signifies the source of the goods.  Plaintiff submitted to the PTO evidence of Blenders' substantially exclusive and continuous use of the mark in commerce in support of registration of the mark.  On information and belief, Blenders was the first party to use a 3-D button logo in the upper corner of the glasses.  To the extent there are subsequent users of a

3-D button logo, including Defendants, such use was intentionally done to create consumer confusion as to the source of the subsequent users' goods.

7.      Blenders' business model has been very successful, and the company and Mr. Fisher have received a great deal of publicity from national media outlets.  In the fall of 2023, Blenders launched a collaboration with NFL Hall of Fame player and current University of Colorado head football coach, Deion Sanders, also known as "Coach Prime."  Blenders' signature "Coach Prime" sunglasses received massive nationwide publicity from both news and sports outlets as Coach Prime and the Colorado Buffalos took the nation by storm, upsetting 17th-ranked Texas Christian in the first game of the season.

8.      Blenders also sponsors numerous high-profile athletes in many sports, including NFL football player Talor Rapp, Olympic gold medalist in snowboarding Lindsey Jacobellis, three-time Formula One World Drivers Champion Max Verstappen (2021, 2022, 2023), and professional surfing star Lakey Peterson.  Blenders also has a sponsorship deal in place with the University of Colorado athletic department.  These sponsorships not only enhance the visibility of Blenders and its products to the consuming public, but also make Plaintiff a target for new market entrants who wish to ride on Blenders' coattails.

9.      As a result of Blenders' success in the marketplace, copycat companies have come forward attempting to replicate Blenders' business model.  This they are allowed to do, but only so long as they do not infringe on Blenders' intellectual property.  Some companies select a very different name and do not use Blenders' registered trade dress in their own sunglass designs. Others, such as the Defendants in this case, have brazenly copied Blenders' intellectual property and have ignored Blenders' letters demanding that they cease and desist from infringing Blenders' registered trademarks.

///

///

///

///

///

10.     For example, Neven Eyewear sunglasses are a blatant knockoff of Blenders' registered 3-D Button Logo, as shown below (Blenders' on left; Defendants' on right):



Blenders glasses (above)                    Neven glasses (above)

11.     Defendants commenced sales of their infringing glasses after learning of Blenders' success in the marketplace.  Defendants intentionally and willfully copied Plaintiff's glasses, such that Defendants' glasses are effectively counterfeit versions of Plaintiff's goods.

12.     In each instance, the Defendants glasses use a mark that is confusingly similar to the registered Blenders 3-D Button Logo.  Consumers would believe, mistakenly, that Blenders is the source, origin, or sponsor of the Defendants' products.  Defendants have even carefully mimicked the lens colors of the Blenders glasses.  While this alone might not constitute trademark confusion, the use of a confusingly similar trademark in connection with the same color lenses would mislead consumers, to the detriment of Plaintiff.

13.     Neven Eyewear's website at https://neveneyewear.com/ offers many pairs of sunglasses for sale that infringe Blenders' registered trade dress.

14.     The Neven Eyewear glasses use a configuration featuring three raised tildes within a raised circle located on the front of the upper left corner of the sunglass lens, in a direct copy of Blenders' registered 3-D Button Logo.  In both marks, the raised circle is silver or white, the background is black, and the raised lines are silver.  Defendants have copied Blenders' registered 3-D Button Logo down to the smallest detail.  Consumers encountering the Neven glasses in public would likely believe, erroneously, that Neven's glasses are actually Blenders glasses.

15.     Defendants have also adopted confusingly similar versions of Blenders' three horizontal lines mark, using tildes in place of horizontal lines, with and without a circle, as depicted below:

 

16.     Defendant Neven Florida owns a U.S. trademark registration for the NEVE N & Design mark (Reg. No. 6,330,350), as depicted below, for use on "Eyewear; Eyewear accessories, namely, straps, neck cords and head straps which restrain eyewear from movement on a wearer; Eyewear cases; Eyewear pouches; Eyewear retainers; Eyewear, namely, sunglasses, eyeglasses and ophthalmic frames and cases therefor; Eyewear, namely, sunglasses and eyeglasses; Sunglass cords; Sunglass lenses; Sunglasses; Cases for eyeglasses and sunglasses; Floatable sunglasses; Nose guards which can be worn by attachment to eyewear such as sunglasses and ski goggles;

Nose pads for eyewear; Protective eyewear; Protective eyewear and component parts thereof; Safety eyewear; Sports eyewear," in International Class 9.



The application was filed on March 1, 2020, registered on April 20, 2021, with a claimed first use in commerce date of August 30, 2020. Thus, Defendants' alleged first use date is far later than Plaintiff's priority date in its marks. The NEVE N & Design mark is confusingly similar to Plaintiff's BLENDERS mark in which the "E"s consist of three horizontal lines.

17. Defendants have also copied Blenders' carrying case, including the shape of the case, the materials used, the colors, and the logo placement. The Blenders case is depicted below at left, and Defendants' case is depicted below at right.



In every respect, Defendants' case is designed to replicate Blenders' case and confuse consumers.

18. Defendants have also copied Blenders' retainer cord, which is designed to prevent loss of the glasses. The Blenders retainer cord features the Stripes and Circle logo on a button that the wearer can press to slide and adjust the fit of the glasses. Defendants' cord uses the confusingly similar logo of three tildes in a circle with the same configuration, as depicted below:





The result is consumers encountering Defendants' retainer cord would believe, mistakenly, that the cord is produced, authorized, or sponsored by Blenders.

19.     Blenders through its counsel reached out to Defendants several times to notify Defendants of Blenders' intellectual property rights and to demand that Defendants cease and desist from their infringing use of Blenders' intellectual property.  Defendants ignored all these efforts, leaving Blenders with no choice but to seek redress in court.

20.     Not only did Defendants ignore Blenders' letters, but after receiving letters from Blenders, Neven commenced to file copycat U.S. trademark applications, including Ser. No. 97/802,512 for the three tildes design without a circle (depicted above), and Ser. No. 97/865,331 for trade dress that is confusingly similar and even virtually identical to Blenders' registered 3-D Button Logo.  Plaintiff's registered trade dress is pasted below at left, and Descendants' trade dress is pasted below at right:

Defendants' trade dress is clearly a copy of Plaintiff's registered mark.



21.     Defendants' sunglasses are blatant and obvious knockoffs of Blenders' registered trademarks.  Moreover, Defendants refused to respond to Blenders' reasonable demands that Defendants cease infringing Blenders' rights.  Thus, Defendants have engaged in willful infringement of Blenders' intellectual property, and an award of enhanced damages and recovery of attorneys' fees are appropriate under the federal trademark statute, the Lanham Act.  Lanham Act § 35; 15 U.S.C. § 1117.

**PARTIES**

22.     Plaintiff Blenders Eyewear, LLC ("Plaintiff" or "Blenders") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 4683 Cass Street, San Diego, California 92109.

23.     On information and belief, Defendant LE VENTURES, LLC ("Le Ventures California") is a limited liability company organized and existing under the laws of the State of California, with its principal place of business at 8605 Santa Monica Blvd, #84045, Los Angeles, California 90069.  On ifnormatino and belief, Le Ventures California was formed by Defendant Khoi Le.

24.     On information and belief, Defendant LE VENTURES, LLC ("Le Ventures Nevada") is a limited liability company organized and existing under the laws of the State of Nevada.  Le Ventures Nevada's principal place of business is unknown, but its registered agent is listed as Ricardo Orozco, 187 E. Warm Springs Road Suite B, Las Vegas, NV 89119.  On information and belief, Le Ventures Nevada is managed by Defendants Suzanne Elizabeth Connelly and William L. Potts.

25.     On information and belief, Defendant NEVEN EYEWEAR LLC ("Neven Nevada") is a limited liability company organized and existing under the laws of the State of Nevada, with its principal place of business at 5940 S Rainbow Blvd Ste 400 # 84045, Las Vegas, Nevada 89118.  On information and belief, Defendant 37 Ventures, LLC is the managing member of Neven Nevada.

26.     On information and belief, Defendant NEVEN EYEWEAR, LLC ("Neven Florida") is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business at 225 5th Avenue, Ste 1, Indialantic, Florida 32903.

27.     On information and belief, Defendant NEVEN HOLDINGS, LLC ("Neven Holdings") is a limited liability company organized and existing under the laws of the State of Florida, with its principal place of business at 870 N. Miramar Ave., #391, Indialantic, Florida 32903.  On information and belief, Defendant Jonathan Strauss is registered agent for Neven Holdings, and Defendants Jonathan Strauss and Khoi Le are managers of the company.

28.     On information and belief, Defendant 37 VENTURES, LLC ("37 Ventures") is a limited liability company organized and existing under the laws of the State of Nevada, with its principal place of business at 5940 S Rainbow Blvd Ste 400 # 84045, Las Vegas, Nevada 89118.  On information and belief, Defendant Le Ventures, LLC is the managing member of 37 Ventures.

29.     On information and belief, Defendant LE VENTURES HOLDING, INC. ("LVH") is a limited liability company organized and existing under the laws of the State of Nevada, with its principal place of business at 5940 S Rainbow Blvd Ste 400, Las Vegas, Nevada 89118.  On information and belief, Defendant Khoi Le is CEO, Secretary, and CFO of LVH.

30.     On information and belief, Defendant Khoi Le ("Mr. Le") is a resident of the State of California, with an address of 8605 Santa Monica Blvd #84045, Los Angeles, CA 90069.  On information and belief, Mr. Le is a manager of Defendant Le Ventures California, CEO, Secretary, and CFO of LVH, and a principal of Neven.

31.     On information and belief, Defendant Suzanne Elizabeth Connelly ("Ms. Connelly") is a resident of the State of Nevada, with an address of 187 E. Warm Springs Road Suite B, Las Vegas, NV 89118.  On information and belief, Ms. Connelly is a managing member of Le Ventures Nevada.

32.     On information and belief, Defendant William L. Potts ("Mr. Potts") is a resident of the State of Nevada, with an address of 187 E. Warm Springs Road Suite B, Las Vegas, NV 89118.  On information and belief, Mr. Potts is a managing member of Le Ventures Nevada.

33.     On information and belief, Defendant Jonathan Strauss ("Mr. Strauss") is a resident of the State of Florida, with an address of 139 Cambridge Court, Indialantic, FL 32903.  On information and belief, Mr. Strauss purports to be CEO of "Neven Eyewear," but it is unclear as to which entity he claims to be CEO of.  On information and belief, Mr. Strauss is a key principal, partner, and/or owner of Defendant Le Ventures California.

34.     On information and belief, all of the above Defendants are unlawfully and unfairly using, without authorization, Plaintiff's registered trademark, and confusingly similar variations thereof, in connection with websites and other forms of online advertising that promote, market, and sell sunglasses in direct competition with Plaintiff.

35.     Plaintiff is presently unaware of the true names of the Defendants identified in the Complaint under the fictitious names Does 1-10.  On information and belief, Does 1-10 are unlawfully and unfairly using, without authorization, Plaintiff's registered trademark, and confusingly similar variations thereof, in connection with websites and other forms of online

advertising that promote, market, and sell sunglasses in direct competition with Plaintiff.  Plaintiff will amend its Complaint to identify the names of the Doe Defendants as they are discovered.

**JURISDICTION AND VENUE**

36.     This action arises under the federal trademark statute, the Lanham Act, 15 U.S.C. §§ 1051, *et seq*., under the California statutory law of unfair competition, CAL. BUS. & PROF. CODE §§ 17200 and 17500, *et seq*., under California dilution law, CAL. BUS. & PROF. CODE §§ 14330, and under the common law of the State of California.  The Court has subject matter jurisdiction over the federal trademark, false advertising, and unfair competition claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, 1338, and 1367.  The Court has subject matter jurisdiction over the related California state law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

37.     Defendants are subject to personal jurisdiction in California and in this judicial district based upon the facts alleged herein and because they have purposefully availed themselves of the privilege of conducting business activities in California.  It was foreseeable to them that the harm from their unlawful acts would be suffered in California and in this judicial district.  On information and belief, some of the Defendants, including Khoi Le and Le Ventures, LLC, reside in this judicial district.  On information and belief, all Defendants have extensive contacts with, and conduct business within, the State of California and this judicial district.  Moreover, Plaintiff is informed and believes and, on that basis, alleges that each of the Defendants conspired and acted in concert with one another to commit the wrongs against Plaintiff alleged herein, and in doing so were at all relevant times the agents, servants, employees, principals, joint venturers, alter egos, and/or partners of each other.

38.     Plaintiff is further informed and believe, and on that basis alleges, that in taking the actions alleged in this Complaint, each of the Defendants was acting within the scope of authority conferred upon that Defendant by the consent, approval, and/or ratification of the other Defendants.  Plaintiff is further informed and believes and on that basis alleges that Defendants controlled and directed, and financially benefited from, all of the unlawful activities alleged in this Complaint, had an apparent or actual partnership with the persons or entities that conspired with them to engage in such unlawful acts, have supplied and continue to offer for sale to the

1   public unlawful products with knowledge that the products are unlawful, had and have authority

2   to bind such persons or entities in transactions with third parties concerning the subject matter of

3   such unlawful conduct, and exercise direct ownership of, control over, and monitoring of the

4   infringing products described in this Complaint.

5         39.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) because

6   Defendants have extensive contacts with, and conduct business within, the State of California and

7   this judicial district, because some Defendants reside within the State of California and this

8   judicial district, and because a substantial part of the events or omissions giving rise to Plaintiff's

9   claims occurred in this judicial district.

10                **FACTS COMMON TO ALL CAUSES OF ACTION**

11         40.    Blenders was founded by Chase Fisher in San Diego, California.  In 2011, Mr.

12   Fisher developed a business concept of offering stylish sunglasses that were of high quality but

13   were less expensive than designer brands.  He secured a small loan and launched Blenders

14   Eyewear, named after Hornblend Street, which was the street he lived on at the time.  Mr. Fisher

15   and Blenders have been using the BLENDERS name and mark on sunglasses continuously in

16   U.S. commerce since at least as early as March 1, 2012.  Blenders owns numerous U.S. trademark

17   registrations for the BLENDERS and BLENDERS EYEWEAR marks.

18         41.    Mr. Fisher and Blenders have been using the BLENDERS name and mark on

19   sunglasses continuously in U.S. commerce since at least as early as March 1, 2012.  Blenders

20   owns numerous U.S. trademark registrations for the BLENDERS and BLENDERS EYEWEAR

21   marks.

22         42.    The BLENDERS brand has been wildly successful, earning recognition in the

23   online marketplace and on social media, as well as attracting national attention in the press.

24   Within three years of Mr. Fisher's founding of the company, Blenders made over $1 million in

25   revenue.  In December 2019, Blenders was valued at $90 million after the Safilo Group, an Italian

26   eyewear company, announced that it would acquire 70% of the company.  Mr. Fisher stayed on as

27   CEO and continues to serve in that role to this day.

28         43.    Opposer's sales for 2019 exceeded $40 million and have increased each year since.

By 2021, Blenders had doubled its revenue to $85 million.  Blenders has over 500 partners and resellers.

44.     Blenders owns at least 16 United States trademark registrations and at least 10 pending applications for various marks, including in particular for the design mark consisting of two parallel diagonal stripes with surrounded by a circle (the "Stripes and Circle Mark"), and for the Blenders 3-D Button Logo.

45.     Blenders owns U.S. Trademark Reg. No. 5,478,589 for the Stripes and Circle Mark for use on "Sunglasses" in International Class 9.[1]  Copies of the certificate of registration and the status page from the PTO website reflecting Plaintiff as owner of the mark are attached hereto as **Exhibit A**.  The mark was filed on April 6, 2017 and registered on May 29, 2018, with a first use in commerce date of at least as early as March 28, 2017.

46.     Blenders owns U.S. Trademark Reg. No. 5,818,015 for the Stripes and Circle Mark for use on "Eyeglasses; Sunglasses; Eyewear pouches; Ski goggles; Snow goggles" in International Class 9.  Copies of the certificate of registration and the status page from the PTO website reflecting Plaintiff as owner of the mark are attached hereto as **Exhibit B**.  The mark was filed on August 13, 2018 and registered on July 30, 2019, with a first use in commerce date of at least as early as January 10, 2016.

47.     Blenders owns U.S. Trademark Reg. No. 6,296,567 for the Stripes and Circle Mark for use on "Balaclavas; Beanies; Caps being headwear; Clothing, namely, neck warmers" in International Class 25.  A copy of Blenders' certificate of registration is attached hereto as **Exhibit C**.  The mark was filed on January 16, 2020 and registered on March 16, 2021, with a first use in commerce date of at least as early as January 20, 2020.

48.     Blenders owns U.S. Trademark Reg. No. 6,301,777 for the Stripes and Circle Mark for use on "Cases for eyeglasses and sunglasses, sunglasses chains and cords" in International Class 9.  A copy of Blenders' certificate of registration is attached hereto as

---

[1] The U.S. Patent and Trademark Office divides all goods and services into 45 classes, using the Nice international classification system.  Sunglasses are classified in Class 9.

KRAKAU LAW, P.C.
ATTORNEY AT LAW
SAN FRANCISCO

COMPLAINT

**Exhibit D**.  The mark was filed on August 21, 2018 and registered on March 23, 2021, with a first use in commerce date of at least as early as April 1, 2014.

49.     Blenders owns U.S. Trademark Reg. No. 6,296,561 for the Stripes and Circle Mark for use on "Skiing and snowboarding helmets" in International Class 9.  A copy of Blenders' certificate of registration is attached hereto as **Exhibit E**.  The mark was filed on January 16, 2020 and registered on March 16, 2021, with a first use in commerce date of at least as early as October 20, 2020.

50.     Blenders owns U.S. Trademark Reg. No. 7,189,644 for the Blenders 3-D Button Logo for use on "Sunglasses in International Class 9.  A copy of Blenders' certificate of registration is attached hereto as **Exhibit F**.  The mark was filed on December 13, 2022 and registered on October 10, 2023, with a first use in commerce date of at least as early as March 15, 2017.

51.     Blenders owns pending U.S. Trademark Application Ser. No. 97/193,962 for the Stripes and Circle Mark for use on "Retail store services featuring eyeglasses, eyewear, eyewear cases, eyewear pouches, eyewear retainers, sunglass cords, sunglasses, bicycle helmets, cases for eyewear, cases for eyeglasses and sunglasses, skateboard helmets, ski glasses, ski goggles, snow goggles, snowboard helmets, sports helmets, clothing, jewelry, towels, stickers, sunglasses cleaning kits, beach blankets, backpacks, bags, replacement lenses for sunglasses, watches, gloves, and sunglasses repair kits; Wholesale store services featuring eyeglasses, eyewear, eyewear cases, eyewear pouches, eyewear retainers, sunglass cords, sunglasses, bicycle helmets, cases for eyewear, cases for eyeglasses and sunglasses, skateboard helmets, ski glasses, ski goggles, snow goggles, snowboard helmets, sports helmets, clothing, jewelry, towels, stickers, sunglasses cleaning kits, beach blankets, backpacks, bags, replacement lenses for sunglasses, watches, gloves, and sunglasses repair kits; On-line retail store services featuring eyeglasses, eyewear, eyewear cases, eyewear pouches, eyewear retainers, sunglass cords, sunglasses, bicycle helmets, cases for eyewear, cases for eyeglasses and sunglasses, skateboard helmets, ski glasses, ski goggles, snow goggles, snowboard helmets, sports helmets, clothing, jewelry, towels, stickers, sunglasses cleaning kits, beach blankets, backpacks, bags, replacement lenses for sunglasses,

watches, gloves, and sunglasses repair kits; On-line wholesale store services featuring eyeglasses, eyewear, eyewear cases, eyewear pouches, eyewear retainers, sunglass cords, sunglasses, bicycle helmets, cases for eyewear, cases for eyeglasses and sunglasses, skateboard helmets, ski glasses, ski goggles, snow goggles, snowboard helmets, sports helmets, clothing, jewelry, towels, stickers, sunglasses cleaning kits, beach blankets, backpacks, bags, replacement lenses for sunglasses, watches, gloves, and sunglasses repair kits" in International Class 35.  The mark was filed on December 28, 2021.

52.     Blenders owns pending U.S. Trademark Application Ser. No. 97/193,962 for the Stripes and Circle Mark for use on "Balaclavas; Beanies; Gloves; Hats; Headbands; Pants; Sandals; Shirts; Shoes; Shorts; Socks; Sweatshirts; Swimwear; Underwear; Belts; Caps being headwear; Jackets; Jerseys; Neck gaiters; T-shirts; Wristbands as clothing; Athletic shorts; Board shorts; Cyclists' jerseys; Hooded sweatshirts; Polo shirts; Sleep pants; Sleep shirts; Sweat pants," in International Class 25.  The mark was filed on November 21, 2021.

53.     Collectively, the above trademark registrations are referenced herein as the "BLENDERS Registrations."  The BLENDERS Registrations are valid, subsisting, and in full force and effect.

54.     Blenders' pending applications are for goods and services that are related to the goods and services set forth in the BLENDERS Registrations.  Therefore, those applications benefit from the earlier priority date established by the BLENDERS Registrations.

55.     Collectively, the BLENDERS Registrations and pending applications are referenced herein as the BLENDERS Marks.

56.     Each of the BLENDERS Registrations is at least prima facie evidence of: (i) the validity of each registration; (ii) Blenders Eyewear's ownership of each registration; and (iii) Blenders Eyewear's exclusive right to use the registered mark on the goods and services set forth in the registrations.

57.     Blenders' products are available nationwide through Blenders' website at *blenderseyewear.com*.  Blenders Eyewear also promotes its products through social media,

including Instagram, where Blenders has approximately 641,000 followers, and Facebook, where Blenders has more than one million followers.

58.     As a result of Blenders' longstanding use and registration of the BLENDERS Marks, consumers have come to rely upon the BLENDERS Marks as indicators of source, and of the quality of Plaintiff's goods and services.  Accordingly, Plaintiff has built up substantial goodwill in the BLENDERS Marks.  Consumers associate the BLENDERS Marks with Plaintiff and its high-quality, affordable glasses, sunglasses, ski goggles, and related goods and services.

59.     In or about November of 2022, it came to Plaintiff's attention that Defendants were marketing and selling competing sunglasses using trademarks that are confusingly similar to the BLENDERS Marks.  On February 18, 2023, counsel for Plaintiff sent three letters to the various Defendants noting Plaintiff's rights in the BLENDERS Marks and demanding that Defendants cease and desist from all use of their infringing marks.  One of the Defendants initially responded via email on March 24, 2023, offering to speak directly with Plaintiff but did not respond to the follow up email on March 6, 2023, requesting the phone conference be with Plaintiff's counsel and offering available times.

60.     On October 19, 2023, counsel for Plaintiff sent emailed another letter to Defendants demanding that they cease and desist from use of their infringing marks.

61.     Not only did Defendants refuse to respond or cease their infringing activities, but they also filed at least two U.S. trademark applications for marks that are confusingly similar to Plaintiff's registered trademarks, namely Ser. No. 97/802,512 for the three tildes design without a circle, and Ser. No. 97/865,331 for trade dress that is confusingly similar and even virtually identical to Blenders' registered 3-D Button Logo.  When Defendants made these filings, they falsely declared under oath that "[t]o the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."

///

62.     Blenders engaged in prior use of and held prior trademark rights in all of the BLENDERS Marks before Defendants commenced use of confusingly similar marks on Defendants' goods.

63.     Defendants continue to infringe on Blenders' intellectual property rights with full knowledge of said rights and the willful intent to deceive consumers and trade upon the massive goodwill that Blenders has built up in its mark since founding the company in 2011.

64.     On information, there has been actual confusion in the marketplace as to the source, origin, or sponsorship of Defendants' goods.

65.     On information and belief, there has been post-sale confusion as to the source, origin, or sponsorship of Defendants' goods, in that consumers who encounter Defendants' products being worn by others believe, mistakenly, that the goods are produced, authorized, or sponsored by Blenders.

**COUNT 1**
**FEDERAL TRADEMARK INFRINGEMENT**
**-- SECTION 32(1) OF THE LANHAM ACT, 15 U.S.C. § 1114**

66.     Plaintiff repeats and realleges each allegation contained in the foregoing paragraphs of the Complaint as if set forth in full herein.

67.     The BLENDERS Marks are inherently distinctive and/or have acquired secondary meaning connotating Plaintiff as the source of all products and services advertised, marketed and sold in connection with Plaintiff.

68.     Defendants, through the acts and omissions described herein, have used and continue to use in commerce, counterfeits, reproductions, or colorable imitations of the BLENDERS Marks in connection with the sale, offering for sale, distribution, and advertising of goods and/or services.

69.     Blenders has not authorized, licensed, or given permission to Defendants, or any of them, to reproduce, counterfeit, imitate, or use the BLENDERS Marks in any manner whatsoever including but not limited to the infringing products and/or services being marketed, advertised, sold, imported, or distributed by Defendants under or through use of the BLENDERS Marks.

70.     Defendants' above described conduct concerning the BLENDERS Marks is likely to cause confusion, including reverse confusion and/or post-sale confusion, or to cause mistake, or to deceive as to the source, origin, affiliation, approval, sponsorship, and/or association with Blenders.

71.     Defendants' actions constitute trademark infringement in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114.  Defendants have committed the acts alleged above with full knowledge of and in disregard of Plaintiff's rights in and to the BLENDERS Marks. Defendants' actions were willful and for the calculated purpose of misleading and deceiving the public in order to trade on and profit from Blenders' goodwill.

72.     Defendants' trademark infringement has caused and, unless and enjoined and restrained by the Court, will continue to cause Blenders to suffer damage to its business, reputation, goodwill, profits, and the strength of its trademarks, and is causing ongoing irreparable harm to Plaintiff that cannot be fully compensated or measured in money, and for which there is no adequate remedy at law.  Plaintiff is entitled to preliminary and permanent injunctions prohibiting acts and conduct that are likely to continue to cause confusion, mistake, or to deceive as to source, origin, affiliation, approval, sponsorship, and/or association with Blenders.  Pursuant to 15 U.S.C. § 1116(a), Blenders is entitled to an order enjoining Defendants form further infringing the BLENDERS Marks.

73.     Pursuant to 15 U.S.C. § 1117(a), Blenders is entitled to an order requiring Defendants to account to Plaintiff for any and all profits derived by Defendants from their infringing conduct, and to an order awarding damages sustained by Plaintiff by reason of Defendants' infringing conduct.

74.     Pursuant to 15 U.S.C. § 1117(b) and (c), in addition to compensatory damages, Blenders is entitled to recover treble damages and statutory damages of at least $2,000,000 for each type of good or service for which Defendants used counterfeit BLENDERS Marks.

75.     Defendants' conduct alleged herein was intentional and in conscious disregard of Blenders' rights.  Pursuant to 15 U.S.C. § 1117(a), Blenders is entitled to an award of treble damages and/or enhanced profits against Defendants.

76.     Pursuant to 15 U.S.C. § 1118, Blenders is further entitled to, and hereby seeks, an order for destruction of all materials, including but not limited to all labels, signs, prints, packages, and advertisements bearing the BLENDERS Marks or any other marks confusingly similar to the BLENDERS Marks.

77.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), and as such Blenders is entitled to recover its attorneys' fees and costs incurred as a result of Defendants' actions.

**COUNT II**
**FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION**
**OF ORIGIN – SECTION 43(a) OF THE LANHAM ACT, 15 U.S.C. § 1125(a)**

78.     Plaintiff repeats and realleges each allegation contained in the foregoing paragraphs of the Complaint as if set forth in full herein.

79.     Defendants, through the acts and omissions described herein, have used in commerce words, terms, names, symbols, false designations or origin, false or misleading descriptions of fact, and/or false or misleading representations of fact, in connection with the sale, offering for sale, distribution, and advertising of goods.

80.     Blenders has not authorized, licensed, or given permission to Defendants, or any of them, to reproduce, counterfeit, imitate, or use the BLENDERS Marks in any manner whatsoever including, without limitation, on the infringing products and/or services being marketed, advertised, sold, imported, or distributed by Defendants under or through use of the BLENDERS Marks.

81.     Defendants' acts described herein are likely to cause confusion, including reverse confusion and post-sale, or to cause mistake or to deceive consumers as to the affiliation, connection, or association of Defendants with Blenders, and/or as to the origin, sponsorship, or approval of Defendants' goods, in violation of 15 U.S.C. § 1125(a).

82.     As a direct and proximate result of Defendants' creation of a false impression of association between Blenders and Defendants, and Defendants' use of a false designation of

origin and false or misleading representation of fact in connection with Defendants' products and/or services, Blenders has been damaged and will continue to be damaged.

83.     Defendants' trademark infringement has caused and, unless and enjoined and restrained by the Court, will continue to cause Blenders to suffer damage to its business, reputation, goodwill, profits, and the strength of its trademarks, and is causing ongoing irreparable harm to Plaintiff that cannot be fully compensated or measured in money, and for which there is no adequate remedy at law.  Plaintiff is entitled to preliminary and permanent injunctions prohibiting acts and conduct that are likely to continue to cause confusion, mistake, or to deceive as to source, origin, affiliation, approval, sponsorship, and/or association with Blenders.  Pursuant to 15 U.S.C. § 1116(a), Blenders is entitled to an order enjoining Defendants form further infringing the BLENDERS Marks.

84.     Pursuant to 15 U.S.C. § 1117(a), Blenders is entitled to an order requiring Defendants to account to Plaintiff for any and all profits derived by Defendants from their infringing conduct, and to an order awarding damages sustained by Plaintiff by reason of Defendants' infringing conduct.

85.     Defendants' conduct alleged herein was intentional and in conscious disregard of Blenders' rights.  Pursuant to 15 U.S.C. § 1117(a), Blenders is entitled to an award of treble damages and/or enhanced profits against Defendants.

86.     Pursuant to 15 U.S.C. § 1118, Blenders is further entitled to, and hereby seeks, an order for destruction of all materials, including but not limited to all labels, signs, prints, packages, and advertisements bearing the BLENDERS Marks or any other marks confusingly similar to the BLENDERS Marks.

87.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a), and as such Blenders is entitled to recover its attorneys' fees and costs incurred as a result of Defendants' actions.

///

///

///

**COUNT III**
**UNFAIR COMPETITION AND UNFAIR BUSINESS PRACTICES**
**– CAL. BUS. & PROF. CODE § 17200 AND 17500 ET SEQ.**

88.　Plaintiff repeats and realleges each allegation contained in the foregoing paragraphs of the Complaint as if set forth in full herein.

89.　Defendant' acts described herein constitute unlawful, unfair, and/or fraudulent business practices and misleading advertising pursuant to California Business and Professions Code § 17200.

90.　Blenders has been damaged and will continue to be damaged by Defendants' unlawful, unfair and/or fraudulent business practices and misleading advertising as alleged herein.

91.　Blenders is entitled to preliminary and permanent injunctions prohibiting Defendants, and each of them, from continuing the practices alleged herein, and Blenders is entitled to restitution of all amounts acquired by Defendants by means of such wrongful acts.

**COUNT IV**
**STATE TRADEMARK DILUTION AND INJURY**
**TO BUSINESS REPUTATION – CAL. BUS. & PROF. CODE § 14330**

92.　Plaintiff repeats and realleges each allegation contained in the foregoing paragraphs of the Complaint as if set forth in full herein.

93.　The BLENDERS Marks constitute valid trademarks under state law, are distinctive, and have acquired secondary meaning.

94.　Defendants' use of the BLENDERS Marks is causing a likelihood of dilution of the BLENDERS Marks by depriving them of their exclusive capacity to identify and distinguish Plaintiff.

95.　Defendants' acts described herein constitute injury to business reputation and/or dilution within the meaning of Business and Professions Code § 14330.

96.　Pursuant to Business and Professions Code § 14330, Blenders is entitled to an injunction prohibiting Defendants, and each of them, from continuing their use of the BLENDERS Marks and any other marks dilutive of or harmful to the BLENDERS Marks.

///

**COUNT V**
**COMMON LAW TRADEMARK INFRINGEMENT**

97.    Plaintiff repeats and realleges each allegation contained in the foregoing paragraphs of the Complaint as if set forth in full herein.

98.    Defendants' acts described herein constitute common law trademark infringement under state law.

99.    Defendants, through the acts and omissions described above, have used and continue to use, in commerce words, terms, names, symbols, and devices which are confusingly similar to those of Blenders, in a manner that is likely to cause confusion, including reverse confusion, or mistake or to deceive as to the affiliation, connection, or association of Defendants with Blenders, or as to the origin of Defendants' goods, or as to the sponsorship or approval of Defendants' goods by Blenders.

100.    Blenders has been damaged and will continue to be damaged by Defendants' infringing activities.

101.    Blenders is entitled to preliminary and permanent injunctions prohibiting Defendants from continuing the infringing practices described herein.

102.    Blenders is also entitled to profits and damages arising from Defendants' wrongful use of the BLENDERS Marks.

103.    Defendants' conduct has been and continues to be willful, wanton, fraudulent, oppressive, malicious, and in conscious disregard of Blenders' rights, thereby justifying an award of punitive and/or exemplary damages in a substantial amount according to proof at trial.

**COUNT VI**
**COMMON LAW UNFAIR COMPETITION**

104.    Plaintiff repeats and realleges each allegation contained in the foregoing paragraphs of the Complaint as if set forth in full herein.

105.    Defendants' acts described herein constitute unfair competition under the common law.

///

106.    As a direct and proximate result of Defendants' conduct, Plaintiff is entitled to recover all proceeds and other compensation received or to be received by Defendants arising from their unfair competition.  Plaintiff requests the Court to order Defendants to render an accounting to ascertain the amount of such profits and compensation.

107.    As a direct and proximate result of Defendants' unfair competition, Plaintiff has been damaged and Defendants have been unjustly enriched, in an amount that will be proved at trial.  Such damages, restitution, and/or disgorgement should include a declaration by this Court that Defendants are constructive trustees for the benefit of Plaintiff and an order that Defendants convey to Plaintiff all the gross receipts received or to be received that are attributable to Defendants' unfair competition.

108.    Defendants' conduct is causing and, unless enjoined and restrained by this Court, will continue to cause Blenders great and irreparable injury that cannot fully be compensated or measured in money.  Blenders has no adequate remedy at law.  Blenders is entitled to preliminary and permanent injunctions prohibiting further unfair competition by Defendants.

109.    Defendants' conduct has been and continues to be willful, wanton, fraudulent, oppressive, malicious, and in conscious disregard of Blenders' rights, thereby justifying an award of punitive and/or exemplary damages in a substantial amount according to proof at trial.

## JURY DEMAND

Plaintiff Blenders Eyewear, LLC demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court:

A.    Award Plaintiff actual damages according to proof;

B.    Award Plaintiff statutory damages of two million dollars ($2,000,000) for each willful use by Defendants of a counterfeit marks, or such other amount as the Court deems just, pursuant to 15. U.S.C. § 1117(c);

C.    Order an accounting and award of Defendants' profits derived in any way from their unlawful conduct, or for treble Blenders' actual damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b);

D.      Award Blenders restitution and/or disgorgement of all amounts obtained by Defendants by means of their wrongful acts described herein;

E.      Award Plaintiff punitive and exemplary damages for the Counts stated herein, including income and profits Plaintiff lost and may lose in the future as a result of Defendants' unlawful activities including but not limited to trademark infringement and unfair competition; together with any costs;

F.      Preliminarily and permanently enjoin Defendants, their agents, servants, employees, privies, successors, and assigns, and all claiming any rights through it, from offering, marketing, selling, or providing services under a trademark constituting trademark infringement or unfair competition against Plaintiff's rights;

G.      Cancel U.S. Trademark Reg. No. 6,330,350 for the NEVE N & Design mark;

H.      Impose a constructive trust as set forth herein;

I.      Order Defendants, pursuant to 15 U.S.C. § 1116(a), to file with this Court and serve upon Plaintiff within thirty (30) days after entry of the injunction a written report under oath describing in detail the manner and form in which Defendants have complied with the injunction, including ceasing all offering of goods and services under names and/or marks as set forth above;

J.      Award Plaintiff any additional damages to which it is entitled for Defendants' unlawful acts as alleged herein;

K.      Declare this case exceptional under 15 U.S.C. § 1117;

L.      Award Plaintiff costs and reasonable attorneys' fees under 15 U.S.C. §1117;

M.      Enter judgment for Plaintiff on all claims for relief asserted in the Complaint in an amount to be proven at trial;

N.      Enter judgment in favor of Plaintiff for pre-judgment and post-judgment interest at the legal rate;

O.      Award Plaintiff reasonable attorneys' fees and expenses of litigation;

P.      Assess all costs against Defendants; and

Q.      Grant Plaintiff any further relief that the Court deems just and equitable.

///

Respectfully submitted,

KRAKAU LAW, P.C.


By: /s/ Gregory M. Krakau
     Gregory M. Krakau (Bar No. 248607)


Attorney for Plaintiff
BLENDERS EYEWEAR, LLC